MARY FUNK *v.* ALICE J. BANNON ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and BORDON, Js.

Argued June 9—decided July 11, 1961

*John E. McNerney,* with whom were *Edward B. Fitzgerald* and, on the brief, *Francis J. Moran,* for the appellant (defendant Andrew F. Gorske).

*Charles G. Albom,* for the appellee (plaintiff).

BORDON, J. In this action, the plaintiff seeks to recover damages for personal injuries alleged to have been caused by a dog owned and kept by the defendants. The trial court rendered judgment against the defendant Andrew F. Gorske and in favor of the other two defendants. The defendant Andrew F. Gorske, hereinafter referred to as the defendant, has appealed.

The finding, which is not subject to correction, discloses the following facts: The defendant and his wife owned and occupied property in New Haven at 96 Myron Street. On June 27, 1958, the defendant owned, and had owned for several years, a German shepherd dog which was old but strong and active. It was friendly to the plaintiff. On June 27, the plaintiff, as she had for two years prior thereto, attended the defendant as a practical nurse. The defendant, who was partially paralyzed and a bed patient, frequently requested the plaintiff to take his dog on a leash for a walk in his unfenced yard. The plaintiff customarily complied with these requests. On the day in question, as she was walking the dog on a leash pursuant to the defendant's request, a strange dog came on the premises. In

an effort to restrain the defendant's dog, the plaintiff was pulled off balance and fell to the ground, sustaining injuries.

Two issues are raised by the appeal: (1) whether the exception in § 22-357 of the General Statutes relieves the defendant from liability, and (2) whether the damages which were awarded are excessive.

The plaintiff's cause of action was founded on what is now § 22-357, which reads as follows: "If any dog does any damage to either the body or property of any person, the owner or keeper, or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog." The principal claim of the defendant is that at the time the plaintiff was injured, her conduct in holding the leash and restraining the natural instincts of the defendant's dog amounted to teasing, tormenting or abusing it and thus was within the exception of the statute.

The precursor of our statute was enacted in 1798. Statutes, 1808, p. 238, § 2. It contained no express exception to the liability of a dog owner. From time to time we have considered the intent expressed in the statute and its amendments. In *Kelley* v. *Killourey*, 81 Conn. 320, 325, 70 A. 1031, we held that, in spite of the absence of any express exception to liability in the statute [then Rev. 1902, § 4487], there is an implied exception that one who wilfully and knowingly irritates a dog to the point of retaliation cannot recover. In *Dorman* v. *Carlson,* 106

Conn. 200, 203, 137 A. 749, we interpreted the then existing statute (Rev. 1918, § 3404), which relieved a dog owner from liability to any person who, at the time of his injury, "was committing a trespass or other tort." We held that provision to mean only torts committed upon the person or property of the owner or keeper or his family, whom a dog, with its characteristic loyalty, would instinctively defend and protect, and torts, committed on the dog, which would be likely to excite it to the use of its natural weapons of defense. See also *Granniss* v. *Weber*, 107 Conn. 622, 626, 141 A. 877; *McCarthy* v. *Daunis*, 117 Conn. 307, 310, 167 A. 918; *Hanson* v. *Carroll*, 133 Conn. 505, 510, 52 A.2d 700.

In *Weingartner* v. *Bielak*, 142 Conn. 516, 519, 115 A.2d 668, we considered the intent expressed in the provision of the present statute excepting liability for damage when the damage "has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing" the dog. See also *Schonwald* v. *Tapp*, 142 Conn. 719, 721, 118 A.2d 302. We again considered this language in *Kowal* v. *Archibald*, 148 Conn. 125, 129, 167 A.2d 859. In that case we held as follows: "The clause in the statute denying recovery to a plaintiff who 'was teasing, tormenting or abusing such dog' refers to conduct which (a) is of such a nature that it would naturally antagonize the dog and therefore cause it to make an attack upon the injured party and (b) is improper in the sense that it is without justification." In the case at bar, the plaintiff, in holding onto the leash and restraining the defendant's dog from attacking the strange dog or from leaving the defendant's unfenced premises, was carrying out the wishes and instructions of the

defendant. While the conduct of the plaintiff may have induced the defendant's dog to exert all of its strength and, by so doing, to cause injuries to her, it was not improper in the sense that it was without justification. See *Kowal* v. *Archibald,* supra, 130. The exception from liability under the statute does not apply under the facts of the instant case. *Weingartner* v. *Bielak,* supra; *Verrilli* v. *Damilowski,* 140 Conn. 358, 361, 100 A.2d 462; *Ingeneri* v. *Kluza,* 129 Conn. 208, 210, 27 A.2d 124.

The defendant also claims that the damages awarded are excessive. The plaintiff's injuries were numerous and varied. She had several abrasions, some of which required suturing. She was confined in the hospital from June 27, 1958, to July 7, 1958. The links of the leash cut into, and tore, the flesh of the fingers of her right hand; she suffered a fracture of the left elbow resulting in a 20 to 25 per cent permanent disability of the elbow and a 20 per cent disability of the entire left arm; the use of the fingers of her left hand was impaired; she experienced numbness in her left foot and weakness of her legs. Because of the permanent partial disability of her left arm, she has been unable to pursue her work as a practical nurse. At the time of trial she still suffered pain throughout her body. Her pre-existing diabetes got out of control and was aggravated by her injuries, with the result that she had a cerebral vascular accident due to arteriosclerosis, a progressive disease to be expected in a diabetic. All in all, her injuries were extensive and serious, causing great pain and suffering. Her medical bills amounted to $844.95 and her loss of wages, at $30 a week, to $2300 up to the date of the judgment. She has a life expectancy of approximately twelve years. She had worked for the de-

fendant two years, and immediately prior thereto she had worked five years as a practical nurse for various other patients. Before that, she had worked at a manufacturing plant in New Haven, and, earlier, she assisted her husband, a butcher, who was then living, in slaughtering. Accordingly, for many years before the accident she had been continually and gainfully employed. The permanent partial disability of her left arm will preclude her from being employed as a practical nurse in the future. She also claimed traumatic epilepsy, but the epileptic condition was found not to have been caused by the trauma of the fall. The court therefore included no allowance for traumatic epilepsy in its award of damages.

For all the injuries suffered by the plaintiff and for her out-of-pocket loss, the trial court awarded $16,800. We cannot say that it was excessive under the circumstances. The assessment of damages in personal injury cases is peculiarly within the province of the trier and will only be disturbed when plainly excessive. *Stults* v. *Palmer,* 141 Conn. 709, 711, 109 A.2d 592. This is particularly so when the amount is determined in a trial without a jury. *Thompson* v. *Lupone,* 135 Conn. 236, 239, 62 A.2d 861. The practical test in estimating damages is whether the total damages awarded fall somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case or whether the judgment so shocks the sense of justice as to compel the conclusion that the trial court could not reasonably have arrived at it. *Silks* v. *Monzani,* 128 Conn. 470, 474, 24 A.2d 247; *Squires* v. *Reynolds,* 125 Conn. 366, 369, 5 A.2d 877; *Briggs* v. *Becker,* 101 Conn. 62, 66, 124 A. 826.

The statement of facts found by the court in con-

nection with the plaintiff's bill of exceptions adequately disposes of her claims that the accident caused her epilepsy. The trial court had a right to rely on the testimony of Dr. Franklin Robinson and the defendant's wife in concluding that the epilepsy was not caused by the fall.

There is no error.

In this opinion the other judges concurred.