STATE OF CONNECTICUT *v.* DOUGLAS BECK

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 6-67079

Argued June 2—decided July 3, 1969

*Jackson T. King,* of New Haven, for the appellant (defendant).

*John J. Kelly,* assistant prosecuting attorney, for the appellee (state).

KINMONTH, J.  Upon this appeal from his conviction of operating a motor vehicle while under the influence of intoxicating liquor, in violation of § 14-227a of the General Statutes, the defendant has assigned error in the court's failure to correct the finding, in the charge, and in the admission of certain evidence.  Claims not made at the trial and assignments not briefed will not be considered. Practice Book § 1019; *State* v. *Taylor,* 153 Conn. 72, 86.

A finding in a case tried to the jury is merely a narrative of the facts claimed to have been proved by each side, made for the purpose of fairly presenting any claimed errors in the charge or rulings of the court.  *Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 149.  The charge is to be tested by the finding, not by the evidence.  *Kowal* v. *Archibald,* 148 Conn. 125, 129; *State* v. *DeGennaro,* 147 Conn. 296, 301, cert. denied, 364 U.S. 873.

The finding reveals that the state offered evidence to prove and claimed to have proved the following: On December 28, 1967, at approximately 6:47 p.m., a police officer of the New Haven police department was directed to proceed by squad car to the vicinity of 882 Quinnipiac Avenue and arrived at the scene

about eight minutes later. Quinnipiac Avenue is a public highway with parking on one side and two driving lanes, one in each direction. It was snowing at the time, and there were three to four inches of snow on the ground. When the officer arrived on the scene, he found four damaged cars in the area, ten to twelve people standing around the damaged vehicles, and the defendant standing on the porch of a house directly at the scene. The defendant's vehicle was parked resting against a second vehicle, which was resting against a third vehicle and a fourth vehicle about twenty feet away. The officer inquired of the group of people who was operating each car, and upon information received he went to the porch of 882 Quinnipiac Avenue, where the defendant was standing, inquired of him if he had been driving one of the vehicles, and received a reply in the affirmative. The defendant stated he had been driving his vehicle. Upon request of the officer, the defendant went to his vehicle and produced the registration, which registration was in the name of the defendant and matched the license plate of the vehicle. As soon as the officer commenced his conversation with the defendant on the porch, he became aware that the defendant had been drinking, and when the defendant left the porch to get his registration, the officer formed an opinion that the defendant was intoxicated. The defendant fell about two times when he was walking to get his registration, and again on his way to the squad car. The officer had no difficulty walking in the snow. The officer was able to determine which direction the defendant's vehicle had traveled from the bystanders, the defendant and the tracks in the snow. At the officer's request the owners of the three other vehicles produced their registrations. The defendant admitted that he had had a few drinks but denied that he was intoxicated. After the officer escorted

the defendant to the squad car, he placed him under arrest and advised him of his rights. It was the opinion of the officer that the defendant's condition of intoxication prevented him from operating his car safely. The officer, with the defendant, arrived at the police station approximately one hour after he had arrived in the vicinity of 882 Quinnipiac Avenue. At the police station the defendant first refused to take a blood test but later agreed, and he was taken to Yale-New Haven Hospital, where a blood specimen was taken from the defendant at approximately 8:30 p.m. The officer sealed the container and it was mailed to the state toxicologist. Upon analysis it was found to contain .26 of one percent alcohol, by weight. If a person's blood contains .26 of one percent of alcohol, by weight, at 8:30 p.m., when the blood sample is taken, and he has had nothing to drink in the interim period, that is, between 6:30 and 8:30 p.m., then it is reasonably probable that he was under the influence of intoxicating liquor at 6:30 p.m.

The defendant did not testify but offered evidence to prove the following: After the officer talked to people in the vicinity of 882 Quinnipiac Avenue, he made up his mind that the defendant was the operator of the vehicle registered in his name. Prior to talking to the defendant on the porch, the officer did not warn the defendant of his rights. It takes approximately ninety minutes for an average person to absorb a drink of alcohol on an empty stomach, but with food in the stomach, absorption of alcohol may be extended for one-half hour or more, depending on the type of food consumed. The blood specimen was taken from the defendant at 8:30 p.m., and the analysis is based on the alcohol content in the defendant's blood at that time. In determining whether a person is under the influence of intoxicating liquor at the time of operation, the following

factors are crucial: (1) the time when the sample is taken; (2) the time when liquor is consumed; (3) the time when operation occurs.

The defendant's assignment of error addressed to the charge involves the court's instruction that the jury could infer the approximate time of the accident from certain circumstantial evidence. This is the only ground on which the defendant took an exception. The defendant in his brief and argument endeavors to add another ground, that owing to the lapse of time between the officer's arrival at the scene and the blood test the state failed to establish that the defendant was under the influence of intoxicating liquor when the officer arrived at the scene. The court adequately charged the jury on this subject, and as no exception to the charge was taken to this portion we need not consider it.

On the question before us, the state's evidence was that the officer received a call at 6:47 p.m. to proceed to the vicinity of 882 Quinnipiac Avenue and arrived there about eight minutes later. Four cars were involved, and ten to twelve people were standing around the damaged vehicles. The officer inquired who the operators were and obtained the registrations of the vehicles involved. It is fundamental that circumstantial evidence may be as cogent and convincing as direct evidence. Direct evidence of a fact is not required. Circumstantial evidence not only is sufficient but also may be more certain, satisfying and persuasive than direct evidence. Courts must necessarily rely on circumstantial evidence and are entitled to draw reasonable and logical inferences from all the facts. *State* v. *Taylor,* 153 Conn. 72, 78. "The law recognizes no distinction between circumstantial evidence and direct evidence so far as probative force is concerned. If evidence, whether direct or circum-

stantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction. . . . As has been said so often, proof beyond a reasonable doubt is such proof as precludes every reasonable hypothesis except that which it tends to support and is consistent with the defendant's guilt and inconsistent with any other rational conclusion. The requirement that evidence must be such as satisfies beyond a reasonable doubt 'does not mean that the proof must be beyond a possible doubt, and a possible supposition of innocence is a far different thing from a reasonable hypothesis.' " *State* v. *Smith,* 138 Conn. 196, 200; *State* v. *Smith,* 156 Conn. 378, 382. The test of the sufficiency of proof by circumstantial evidence is whether rational minds could reasonably and logically draw the inference. It is sufficient if the proof produces in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact to be inferred is true. *Console* v. *Nickou,* 156 Conn. 268, 275. The court did not err in its instruction to the jury.

The remaining assignment of error is with regard to the admission into evidence of a statement made to the officer by the defendant at the scene of the accident. The officer testified that he approached the defendant and asked him if he was the driver of "this automobile" and he said he was. The defendant objected on the ground that the necessary warning had not been given to him. The objection was overruled and an exception was taken. It is the defendant's contention that under *Miranda* v. *Arizona,* 384 U.S. 436, the officer should have warned the defendant of his rights before asking any questions. At the time in question, the officer was merely investigating an accident and the defendant was not under any restraint. *Miranda* does not preclude, in the investigation of crime, on-the-scene questioning

of a person without a prior warning, since he is not then under restraint. The adversary system of criminal proceedings commences when an individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any way. See *State* v. *Corrigan,* 4 Conn. Cir. Ct. 190, 195. The officer's single, spontaneous question was hardly the kind of interrogation which would require full warnings under *Miranda.* It seems clear to us that the essence of the situation was not an officer imposing a process of interrogation on a suspect but an officer reacting naturally to the scene before him. The court's ruling was not in error.

There is no error.

In this opinion KOSICKI and DEARINGTON, Js., concurred.